IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NAG MOHAMMED | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1602  (ESH) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| *et al.,* | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF JOSEPH S. IMBURIGA

Pursuant to 28 U.S.C. § 1746, I, Major Joseph S. Imburiga, Judge Advocate General's

Corps, United States Air Force, hereby state that to the best of my knowledge, information and

belief, the following is true, accurate and correct:

1.      I am the Assistant Legal Advisor to the Office for the Administrative Review of

the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Nag Mohammed that are suitable for public release.  The portions of the

record that are classified or considered law enforcement sensitive are not attached hereto or are

redacted.   An OARDEC staff member has redacted information that would personally identify

other detainees and certain U.S. Government personnel and foreign nationals in order to protect

the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  _19 Sep 05_

_____
Joseph S. Imburiga
MAJ, JAGC, USAF



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 0575

**20 JAN 2005**

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 102**

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #102 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

23 Dec 04

MEMORANDUM

From: Legal Advisor
To:     Director, Combatant Status Review Tribunal

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 102

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:   (1) Appointing Order for Tribunal #21 of 16 November 2004
        (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

        a.  The detainee was properly notified of the Tribunal process.  At the initial interview
        with his Personal Representative in Guantanamo Bay, Cuba, the detainee elected to
        participate in the Tribunal.  At a follow-up interview, however, the detainee changed his
        mind and voluntarily elected not to participate.  The detainee requested that his Personal
        Representative present certain information to the Tribunal on his behalf.  A letter from
        the Guantanamo Bay, Cuba, Personal Representative to the Tribunal reflecting the
        detainee's elections is attached as exhibit D-b.  Accordingly, the Tribunal was held *in
        absentia* outside Guantanamo Bay with a new Personal Representative that was familiar
        with the detainee's file.  This Personal Representative had the same access to
        information, evidence, and witnesses as the Personal Representative from Guantanamo
        Bay, Cuba.  The Personal Representative presented the information requested by the
        detainee as exhibit D-c.

        b.  The Tribunal was properly convened and constituted by enclosure (1).

        c.  The Tribunal substantially complied with all provisions of references (a) and (b).  The
        FBI provided two letters certifying that their interrogation reports of 23 May 2002 and 19
        July 2003 have been redacted and that the redacted information would not support a
        determination that the detainee is not an enemy combatant.  These documents appear in
        the Tribunal Decision Report as exhibits R-7 and R-16, respectively.  These exhibits do
        not contain any redactions whatsoever.  This indicates that the exhibits as used by the
        Tribunal were not what the FBI intended for the Tribunal to see.  Since there is no way to
        "un-ring the bell," I have not altered exhibits R-7 or R-16 in any way.  Before any further
        dissemination of these documents, however, they will have to be cleared through FBI.

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 102

Additionally, some information in exhibit R-12 was redacted. JTF-GTMO
intelligence personnel redacted the information, but there is no certification from them
that the withheld information would not support a determination that the detainee is not
an enemy combatant. This is an error that the Recorder and Tribunal members should
have corrected. Each of the redactions contains a note that the redacted information
pertains to sources and methods of intelligence collection. This tends to indicate that the
redacted information would not support a determination that the detainee is not an enemy
combatant.

d.  The detainee requested no witnesses or other evidence.

e.  The Tribunal's decision that detainee # 102 is properly classified as an enemy
combatant was unanimous.

f.  The detainee's Personal Representative was given the opportunity to review the record
of proceedings and declined to submit comments to the Tribunal.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is
required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN



# Department of Defense
## Director, Combatant Status Review Tribunals

16 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #21

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

███████████████, Colonel, U.S. Air Force; President

████████████, Lieutenant Colonel, U.S. Air Force; Member

████████████, Major, U.S. Air Force Reserve; Member (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

SECRET//NOFORN//X1

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (3).

(U) TRIBUNAL PANEL: ___21___

(U) ISN#: ___102___

Ref:  (a) (U) Convening Order for Tribunal #21 dated 16 November 2004 (U)
      (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
      (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
      (3) (U) Copies of Documentary Evidence Presented (S/NF)
      (4) (U) Personal Representative's Record Review (U/FOUO)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 23 November 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #102 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is associated with Taliban forces, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



_____, Col, USAF
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #21 _____

ISN #: _____ 102 _____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was associated with Taliban forces. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The Tribunal conducted the proceeding on 22 November 2004. The Recorder presented Exhibit R-1 during the unclassified portion of the Tribunal. It indicates, among other things, that the detainee: traveled from Turkistan in September 2000, through Kyrgyzstan and Pakistan, to Kabul, Afghanistan for an Eastern Turkestan Islamic Movement (ETIM) meeting; was a member of ETIM, which is listed on the Secretary of State's Terrorist Exclusion list; was closely associated with ████████████ (aka ████████), who is the leader of ETIM; was given instruction on an AK-47; and was arrested in November 2001 near Mazar-e-Sharif, Afghanistan by Northern Alliance troops. After the Tribunal read all of the classified exhibits, the Tribunal requested additional information and recessed in order to allow the Recorder to gather that information. The Tribunal reconvened on 23 November 2004, where the Recorder presented additional evidence. Although there was no substantive evidence presented during the unclassified portion of the Tribunal, the classified exhibits supported most of the assertions on Exhibit R-1, the Unclassified Summary of Evidence.

The Recorder called no witnesses, but did introduce classified evidence (Exhibits R-6 through R-17) during the first closed session of the Tribunal. The Recorder introduced classified Exhibits 18 and 19 during the second closed session of the Tribunal. The detainee chose not to participate in the Tribunal process as reflected in the Detainee Election Form (Exhibit D-a) and the Guantanamo Bay Personal Representative affidavit (Exhibit D-b). Although there was no substantive evidence presented during the unclassified portion of the Tribunal, the classified exhibits supported most of the assertions on the Unclassified Summary of Evidence, and established that the detainee was associated with Taliban forces.

UNCLASSIFIED//~~FOUO~~

### 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

  a. Exhibits: R-1 through R-19 and D-a through D-c

  b. Testimony of the following persons: None.

  c. Statement of the detainee: As contained in D-c.

### 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses.

The Detainee requested no additional evidence be produced.

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

The Recorder offered Exhibit R-1, the Unclassified Summary of Evidence, into evidence during the unclassified portion of the proceeding. As noted above, it indicates, among other things, that the detainee: traveled from Turkistan to Kabul, Afghanistan in September 2000 for an Eastern Turkestan Islamic Movement (ETIM) meeting; was a member of ETIM; was closely associated with ████████, the leader of ETIM; was given instruction on an AK-47; and was arrested in November 2001 near Mazar-e-Sharif, Afghanistan by Northern Alliance troops.

The Tribunal also relied on certain classified evidence in reaching its decision. The Recorder presented Exhibits R-6 through R-17 during the classified portion of the Tribunal. After the Tribunal read all of the classified exhibits, the Tribunal requested additional information and recessed in order to allow the Recorder to gather the information. The Tribunal reconvened on 23 November 2004, where the Recorder presented Exhibits R-18 and R-19. All exhibits were reviewed by the Personal Representative prior to being presented to the Tribunal. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

UNCLASSIFIED//~~FOUO~~

**UNCLASSIFIED//~~FOUO~~**

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The detainee understood the Tribunal proceedings. The detainee chose not to participate in the Tribunal process, as indicated in Exhibits D-a and D-c.

c. The detainee is properly classified as an enemy combatant and is associated with Taliban forces.

## 8. Dissenting Tribunal Member's report

The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Air Force
Tribunal President

**UNCLASSIFIED//~~FOUO~~**

UNCLASSIFIED//FOUO

# DETAINEE ELECTION FORM

**Date:** 12 November 2004

**Start Time:** 1330 hrs

**End Time:** 1440 hrs

**ISN#:** 0102

**Personal Representative:** ▓▓▓▓▓▓▓▓▓▓▓▓ USAF
**(Name/Rank)**

**Translator Required?** YES        **Language?** Uighur

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

--------------------------------------------------------------------------

**Detainee Election:**

☐    ~~Wants to Participate in Tribunal~~ (12 Nov 04 entry)

☒    **Affirmatively Declines to Participate in Tribunal (16 Nov 04 after follow-up/final interview)**

☐    **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Based on a follow-up/final interview conducted on 16 Nov 04, detainee has elected not to participate in the Tribunal; instead, he desires that PR present his responses.  His sudden change of mind seems to have resulted from UNCLAS exhibit R-3 that describes in detail the terrorist group ETIM and its alleged ties to UBL and Al Qaeda/Taliban.  Although detainee adamantly denied having knowledge of these ties, the contents of the exhibit obviously changed his mind.  Detainee has previously professed to being a member of ETIM, but not a terrorist.  Bottom line: he convinced himself that the information about this group would only hurt his chances at the Tribunal.  PR is attempting to ascertain the source of said document, which is a paragraph, typed in MS Word.  FOLLOWING IS THE ORIGINAL ELECTION FORM dated 12 Nov 04: Detainee desires to participate in the Tribunal.   There are neither witnesses nor documentary evidence to present.  However, PR requires a follow-up prior to the tribunal.  Please schedule for early next week. Thank You.

Personal Representative: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

| Exhibit: D-a |
|---|

UNCLASSIFIED//FOUO

An initial interview was held with detainee Mohammad Nag (ISN 0102) on 12 Nov 04

████    The detainee spoke the language of the linguist and understood the linguist.

████    The detainee was reminded that the U.S. government established a Combat Status Review Tribunal to review his designation as an enemy combatant.

████    The detainee was advised that I am not an attorney nor his advocate, but will assist him in the CSRT process if he chooses to participate.

████    The detainee was advised that a tribunal of military officers will review his enemy combatant designation even if he chooses not to participate.

████    The detainee was advised that he will have an opportunity to speak on his own behalf and call witnesses and ask questions of the witnesses and tribunal members.

████    The detainee was advised that he may choose not to appear at the Tribunal hearing or participate in the CSRT process, but that I could present information on his behalf.

████    The detainee confirmed that he understood the process as explained to him and did not have any questions.

████    The detainee affirmatively chose not to participate in the CSRT process but requested that I present the following information on his behalf:  (see attached PR Notes from ISN 0102 Interviews).

I affirm that the information above is complete and accurate to the best of my knowledge.

████████████, Major, USAF                    16 Nov 04
Personal Representative ████                  DATE

Exhibit D-b

**PERSONAL REPRESENTATIVE NOTES FROM ISN 0102 INTERVIEWS**

| PR: | ███ |
|---|---|
| 3 or 4 digit ISN: | 0102 |
| Date: | 12 Nov 04 |
| Start Time: | 1330 |
| End Time: | 1440 |

PR NOTES FROM INITIAL INTERVIEW WITH DETAINEE 0102 (Nag Mohammed)

During the initial interview on 12 Nov 04, detainee elected to participate in the Tribunal and take the Muslim Oath. He had no witnesses or documentary evidence. Detainee responded to the Unclassified Evidence in the following manner (See Summary of Evidence for CSRT – MOHAMMED, Nag, dated 5 Nov 04):

- Para 3a1 – 3a3: Detainee asked when the Eastern Turkestan Islamic Movement (ETIM) was identified as a terrorist organization and that he had no knowledge of this fact.
- Para 3a4 – 3a5: Detainee stated that he was not "closely associated with ███ ███" and that he had only saw him ███ on one occasion.
- Para 3a6: Regarding "given instruction on an AK-47," detainee stated that he did not get instruction on an AK-47 and that he only saw an AK-47. He further stated that there is a big difference in being given instruction and only seeing the rifle.
- Para 3a7 – 3a8: Yes he was arrested near Mazar-e-Sharif; however detainee stated that he did not participate in the M-E-S prison uprising. In fact, detainee was in an inside room when the chaos erupted on the outside. He asked if the US was claiming that he **participated** just because he was **present** at the prison. Detainee denied any participation in the prison uprising.
- GENERAL COMMENTS: Detainee stated that he had no intentions of fighting against the US government or its allies, nor did he fight against or kill any Americans. He claimed that he did not support the Taliban against the US and its coalition partners (para 3a). He found the allegations disturbing and denied having any knowledge of ETIM being on the Terrorist Exclusion list.

During the follow-up/final interview (16 Nov 04), detainee became alarmed and seemed a bit upset when the PR read UNCLAS exhibit R-5 (the exhibit highlights the extent of ETIMs terrorist goals and associations with Usama Bin Laden). The detainee stated that the people on the Tribunal might now accuse him of the items in this exhibit and he would be in a worse situation if he attended the tribunal. PR explained that the exhibit highlights the scope of the ETIM organization and because the exhibit is unclassified the detainee is allowed to review it prior to his tribunal. PR further explained that these (contents of exhibit) are not charges against the detainee. However, the detainee elected not to participate in his tribunal.

███████████████████

, Major, USAF
Personal Representative # ███

Exhibit D-c

UNCLASSIFIED

## Combatant Status Review Board

TO:  Personal Representative

FROM:  OIC, CSRT (05 November 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – MOHAMMED, Nag

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that the detainee supported the Taliban against the United States and its coalition partners.

   The detainee supported the Taliban against the United States and its coalition partners:

   1.  In late September 2000, the detainee traveled from Turkistan, through Kyrgyzstan and Pakistan, to Kabul, Afghanistan for an Eastern Turkestan Islamic Movement (ETIM) meeting.

   2.  The detainee was a member of the ETIM.

   3.  ETIM is listed on the Secretary of State's Terrorist Exclusion list.

   4.  The detainee was closely associated with ███████████ a.k.a. ████████

   5.  ████████████ is the leader of the ETIM.

   6.  The detainee was given instruction on an AK-47 at the Kartisi, Afghanistan guesthouse.

   7.  The detainee was arrested near Mazar-e-Sharif, Afghanistan by Northern Alliance troops in November 2001.

   8.  The detainee participated in the Mazar-e-Sharif prison uprising.

4.  The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

Exhibit R-1

**UNCLASSIFIED**

Memorandum



---

To    :    Department of Defense                    Date 11/04/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Capt. Charles Jamison, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division
           Asst. Gen. Counsel ████████████

Subject:   REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ████████████

        Pursuant to the Secretary of the Navy Order of 29
July 2004, Implementation of Combatant Review Tribunal
Procedures for Enemy Combatants Detained at Guantanamo Bay
Naval Base, Cuba, Section D, paragraph 2, the FBI requests
redaction of the information herein marked[1].  The FBI makes
this request on the basis that said information relates to the
national security of the United States[2].  Inappropriate
dissemination of said information could damage the national
security of the United States and compromise ongoing FBI
investigations.

   CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

        The FBI certifies the aforementioned redaction
contains no information that would support a determination
that the detainee is not an enemy combatant.

        The following documents relative to ISN 102 have
been redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/23/02

---

    [1]Redactions are blackened out on the OARDEC provided FBI
document.

    [2]See Executive Order 12958

Page ___1___ of ___2___

**UNCLASSIFIED**        **UNCLASSIFIED**

Exhibit R-2

UNCLASSIFIED

Memorandum from ████████ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 11/04/2004


      If you need additional assistance, please contact
Asst. Gen. Counsel ████████ (████) or Intelligence Analyst (IA)
████ . IA ████████ (████), ████████.

-2-

UNCLASSIFIED

Memorandum    **UNCLASSIFIED**    

To : Department of Defense                    Date 11/12/2004
     Office of Administrative Review
     for Detained Enemy Combatants
     Capt. Charles Jamison, OIC, CSRT

From : FBI GTMO
       Counterterrorism Division
       Asst. Gen. Counsel ███████████████

Subject: REQUEST FOR REDACTION OF
         NATIONAL SECURITY INFORMATION
         ██████████

        Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1]. The FBI makes this request on the
basis that said information relates to the national security of
the United States[2]. Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

   CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
   DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

        The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

        The following documents relative to ISN 102 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 07/19/03

   [1]Redactions are blackened out on the OARDEC provided FBI
document.

   [2]See Executive Order 12958

Exhibit R-3

UNCLASSIFIED

http://usembassy-australia.state.gov/hyper/2004/0521/epf505.htm

# Washington File

*EPF505 05/21/2004

Fact Sheet: Terrorist Exclusion List Authorized by USA Patriot Act

(Secretary of state, attorney general collaborate on designations) (1660)

The Terrorist Exclusion List (TEL) was created by the USA Patriot Act of 2001, according to a State Department fact sheet released May 21 by the Office of Counterterrorism.

The secretary of state, in consultation with the attorney general, has the authority to identify terrorist groups that may be excluded from immigrating to the United States or who may be asked to leave the country. This could include any groups that have planned or carried out terrorism, have incited others to do so, or have provided any kind of material support.

The purpose of designating terrorist groups, says the fact sheet, is to deter financial aid to them, heighten public awareness of them, alert other governments to U.S. concerns about them, and stigmatize and isolate them.

Ten new groups were added to the TEL on April 29.

The names of new designees are published routinely in the Federal Register.

Following is the text of the State Department fact sheet:

(begin fact sheet)

U.S. Department of State

UNCLASSIFIED



Exhibit Re 4

**UNCLASSIFIED**

Office of Counterterrorism

Washington, D.C.

May 21, 2004

FACT SHEET

Terrorist Exclusion List

Section 411 of the USA Patriot Act of 2001 (8 U.S.C. § 1182) authorized the Secretary of State, in consultation with or upon the request of the Attorney General, to designate terrorist organizations for immigration purposes. This authority is known as the Terrorist Exclusion List (TEL) authority. A TEL designation bolsters homeland security efforts by facilitating the U.S. government's ability to exclude aliens associated with entities on the TEL from entering the United States.

Designation Criteria

An organization can be placed on the TEL if the Secretary of State finds that the organization:

-- commits or incites to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;

-- prepares or plans a terrorist activity;

-- gathers information on potential targets for terrorist activity; or

-- provides material support to further terrorist activity.

**UNCLASSIFIED**

UNCLASSIFIED

Under the statute, terrorist activity means any activity that is unlawful under U.S. law or the laws of the place where it was committed and involves: hijacking or sabotage of an aircraft, vessel, vehicle or other conveyance; hostage taking; a violent attack on an internationally protected person; assassination; or the use of any biological agent, chemical agent, nuclear weapon or device, or explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property. The definition also captures any threat, attempt, or conspiracy to do any of these activities.

Designation Process

The Secretary of State is authorized to designate groups as TEL organizations in consultation with, or upon the request of the Attorney General. Once an organization of concern is identified, or a request is received from the Attorney General to designate a particular organization, the State Department works closely with the Department of Justice and the intelligence community to prepare a detailed administrative record, which is a compilation of information, typically including both classified and open-sources information, demonstrating that the statutory criteria for designation have been satisfied. Once completed, the administrative record is sent to the Secretary of State, who decides whether to designate the organization. Notices of designations are published in the Federal Register.

Effects of Designation

Legal Ramifications

Individual aliens providing support to or associated with TEL-designated organizations may be found inadmissible to the United States, i.e., such aliens

 

UNCLASSIFIED

UNCLASSIFIED

may be prevented from entering the United States or, if already in U.S. territory, may in certain circumstances be deported. Examples of activity that may render an alien inadmissible as a result of an organization's TEL designation include:

-- membership in a TEL-designated organization;

-- use of the alien's position of prominence within any country to persuade others to support an organization on the TEL list;

-- solicitation of funds or other things of value for an organization on the TEL list;

-- solicitation of any individual for membership in an organization on the TEL list; and

-- commission of an act that the alien knows, or reasonably should have known, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material for financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training to an organization on the TEL list.

(It should be noted that individual aliens may also found inadmissible on the basis of other types of terrorist activity unrelated to TEL-designated organizations; see 8 U.S.C. §1182(a)(3)(B).)

Other Effects

1. Deters donation or contributions to named organizations.

2. Heightens public awareness and knowledge of terrorist organizations.

UNCLASSIFIED

UNCLASSIFIED

3. Alerts other governments to U.S. concerns about organizations engaged in terrorist activities.

4. Stigmatizes and isolates designated terrorist organizations.

Background

Secretary of State Colin Powell, in consultation with the Attorney General, designated the following organizations, thereby placing them on the Terrorist Exclusion List (TEL). Ten groups were added to the TEL on April 29, 2004.

Terrorist Exclusion List Designees (alphabetical listing)

-- Afghan Support Committee (also known as [a.k.a.] Ahya ul Turas; a.k.a. Jamiat Ayat-ur-Rhas al Islamia; a.k.a. Jamiat Ihya ul Turath al Islamia; a.k.a. Lajnat el Masa Eidatul Afghania)

-- Al Taqwa Trade, Property and Industry Company Ltd. (formerly known as [f.k.a.] Al Taqwa Trade, Property and Industry; f.k.a. Al Taqwa Trade, Property and Industry Establishment; f.k.a. Himmat Establishment; a.k.a. Waldenberg, AG)

-- Al-Hamati Sweets Bakeries

-- Al-Ittihad al-Islami (AIAI)

-- Al-Ma unah

-- Al-Nur Honey Center

UNCLASSIFIED



UNCLASSIFIED

-- Al-Rashid Trust

-- Al-Shifa Honey Press for Industry and Commerce

-- Al-Wafa al-Igatha al-Islamia (a.k.a. Wafa Humanitarian Organization; a.k.a. Al Wafa; a.k.a. Al Wafa Organization)

-- Alex Boncayao Brigade (ABB)

-- Anarchist Faction for Overthrow

-- Army for the Liberation of Rwanda (ALIR) (a.k.a. Interahamwe, Former Armed Forces (EX-FAR))

-- Asbat al-Ansar

-- Babbar Khalsa International

-- Bank Al Taqwa Ltd. (a.k.a. Al Taqwa Bank; a.k.a. Bank Al Taqwa)

-- Black Star

-- Communist Party of Nepal (Maoist) (a.k.a. CPN(M); a.k.a. the United Revolutionary Peoples Council, a.k.a. the People s Liberation Army of Nepal)

-- Continuity Irish Republican Army (CIRA) (a.k.a. Continuity Army Council)

-- Darkazanli Company

-- Dhamat Houmet Daawa Salafia (a.k.a. Group Protectors of Salafist Preaching;



UNCLASSIFIED

UNCLASSIFIED

a.k.a. Houmat Ed Daawa Es Salifiya; a.k.a. Katibat El Ahoual; a.k.a. Protectors of the Salafist Predication; a.k.a. El-Ahoual Battalion; a.k.a. Katibat El Ahouel; a.k.a. Houmate Ed-Daawa Es-Salafia; a.k.a. the Horror Squadron; a.k.a. Djamaat Houmat Eddawa Essalafia; a.k.a. Djamaatt Houmat Ed Daawa Es Salafiya; a.k.a. Salafist Call Protectors; a.k.a. Djamaat Houmat Ed Daawa Es Salafiya; a.k.a. Houmate el Da awaa es-Salafiyya; a.k.a. Protectors of the Salafist Call; a.k.a. Houmat ed-Daaoua es-Salafia; a.k.a. Group of Supporters of the Salafiste Trend; a.k.a. Group of Supporters of the Salafist Trend)

-- Eastern Turkistan Islamic Movement; a.k.a. Eastern Turkistan Islamic Party; a.k.a. ETIM; a.k.a. ETIP)

-- First of October Antifascist Resistance Group (GRAPO) (a.k.a. Grupo de Resistencia Anti-Fascista Premero De Octubre)

-- Harakat ul Jihad i Islami (HUJI)

-- International Sikh Youth Federation

-- Islamic Army of Aden

-- Islamic Renewal and Reform Organization

-- Jamiat al-Ta awun al-Islamiyya

-- Jamiat ul-Mujahideen (JUM)

-- Japanese Red Army (JRA)

-- Jaysh-e-Mohammed

UNCLASSIFIED

UNCLASSIFIED

-- Jayshullah

-- Jerusalem Warriors

-- Lashkar-e-Tayyiba (LET) (a.k.a. Army of the Righteous)

-- Libyan Islamic Fighting Group

-- Loyalist Volunteer Force (LVF)

-- Makhtab al-Khidmat

-- Moroccan Islamic Combatant Group (a.k.a. GICM; a.k.a. Groupe Islamique Combattant Marocain)

-- Nada Management Organization (f.k.a. Al Taqwa Management Organization SA)

-- New People's Army (NPA)

-- Orange Volunteers (OV)

-- People Against Gangsterism and Drugs (PAGAD)

-- Red Brigades-Combatant Communist Party (BR-PCC)

-- Red Hand Defenders (RHD)

-- Revival of Islamic Heritage Society (Pakistan and Afghanistan offices -- Kuwait



UNCLASSIFIED

office not designated) (a.k.a. Jamia Ihya ul Turath; a.k.a. Jamiat Ihia Al-Turath Al-Islamiya; a.k.a. Revival of Islamic Society Heritage on the African Continent)

-- Revolutionary Proletarian Nucleus

-- Revolutionary United Front (RUF)

-- Salafist Group for Call and Combat (GSPC)

-- The Allied Democratic Forces (ADF)

-- The Islamic International Brigade (a.k.a. International Battalion, a.k.a. Islamic Peacekeeping International Brigade, a.k.a. Peacekeeping Battalion, a.k.a. The International Brigade, a.k.a. The Islamic Peacekeeping Army, a.k.a. The Islamic Peacekeeping Brigade)

-- The Lord's Resistance Army (LRA)

-- The Pentagon Gang

-- The Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Chechen Martyrs (a.k.a. Riyadus-Salikhin Reconnaissance and Sabotage Battalion, a.k.a. Riyadh-as-Saliheen, a.k.a. the Sabotage and Military Surveillance Group of the Riyadh al-Salihin Martyrs, a.k.a. Riyadus-Salikhin Reconnaissance and Sabotage Battalion of Shahids (Martyrs))

-- The Special Purpose Islamic Regiment (a.k.a. the Islamic Special Purpose Regiment, a.k.a. the al-Jihad-Fisi-Sabililah Special Islamic Regiment, a.k.a. Islamic Regiment of Special Meaning)

UNCLASSIFIED

UNCLASSIFIED

-- Tunisian Combat Group (a.k.a. GCT, a.k.a. Groupe Combattant Tunisien, a.k.a. Jama a Combattante Tunisien, a.k.a. JCT; a.k.a. Tunisian Combatant Group)

-- Turkish Hizballah

-- Ulster Defense Association (a.k.a. Ulster Freedom Fighters)

-- Ummah Tameer E-Nau (UTN) (a.k.a. Foundation for Construction; a.k.a. Nation Building; a.k.a. Reconstruction Foundation; a.k.a. Reconstruction of the Islamic Community; a.k.a. Reconstruction of the Muslim Ummah; a.k.a. Ummah Tameer I-Nau; a.k.a. Ummah Tameer E-Nau; a.k.a. Ummah Tameer-I-Pau)

-- Youssef M. Nada & Co. Gesellschaft M.B.H.

(end fact sheet)

(Distributed by the Bureau of International Information Programs, U.S. Department of State. Web site: http://usinfo.state.gov)

UNCLASSIFIED

UNCLASSIFIED

The ETIM is sometimes referred to as the Sharq (East) Turkistan Islamic Partiyisa (STIP). STIP (ETIM) is an Islamic based terrorist group that has allegedly been responsible for over 200 terrorist incidents over the last dozen years or so in the Xinjiang Uygur Autonomous Region of China. It is based in Xinjiang, DP's home region. The East Turkistan terrorists, interested in creating an Islamic state, openly declare that they will create a terrorist atmosphere at kindergartens, hospitals and schools at any cost and are keen at directing explosions at innocent people in order to further that aim. STIP has established at least a dozen secret training bases in the Xinjiang region. Moreover, STIP is closely connected to international terrorist forces, including al Qaeda and the Taliban. The STIP is recognized as an important part of UBL's South Asia terrorist forces. In fact, the STIP, which is headed by ███████, is supported and directed by UBL. It has been reported that in early 1999, UBL met with ██████ to coordinate movements with the Uzbekistan Islamic Liberation Movement and the Taliban and promised financial aid to the group. In February 2001, UBL and Taliban leaders reportedly met in Kandahar to discuss the training of East Turkistan terrorists and decided to allocate a large sum of money for training and the funding of terrorist operations. Al Qaeda, the Taliban and the Uzbekistan Islamic Liberation Movement have reportedly offered a great deal of arms, ammunition, means of transportation and telecommunications equipment to STIP in furtherance of their operations. Finally, al Qaeda has directly trained STIP forces in its training camps in Afghanistan, specifically in Kandahar, Mazar-e-Sharif, and other places. "East Turkistan Forces Cannot Get Away with Impunity," Information Office of the State Council, 21 January 2002, at 1-10, or see the same at "http://china-botschaft.de/ger/24224.html."

UNCLASSIFIED

Exhibit R-5

UNCLASSIFIED//FOUO

# Personal Representative Review of the Record of Proceedings

I acknowledge that on 23 November 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #102.

██████ I have no comments.

_____ My comments are attached.

████████████████
Name

_23 Nov 04_
Date

████████████████
Signature

ISN #102
Enclosure (4)

UNCLASSIFIED//FOUO