# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE:** | **Misc. No. 08-0442 (TFH)** |
| **GUANTANAMO BAY DETAINEE LITIGATION** | **Civil Action Nos.** |

**02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2035, 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0998, 05-cv-0999, 05-cv-1048, 05-cv-1189, 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457, 05-cv-1458, 05-cv-1487, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1505, 05-cv-1506, 05-cv-1509, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1602, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1639, 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1704, 05-cv-1971, 05-cv-1983, 05-cv-2010, 05-cv-2088, 05-cv-2104, 05-cv-2185, 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, 05-cv-2370, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2381, 05-cv-2384, 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2398, 05-cv-2444, 05-cv-2477, 06-cv-0618, 06-cv-1668, 06-cv-1684, 06-cv-1758, 06-cv-1759, 06-cv-1761, 06-cv-1765, 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, 08-cv-0987, 08-cv-1101, 08-cv-1104, 08-cv-1153, 08-cv-1185, 08-cv-1221, 08-cv-1223, 08-cv-1224, 08-cv-1227, 08-cv-1228, 08-cv-1229, 08-cv-1230, 08-cv-1231, 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, 08-cv-1310, 08-cv-1440**

## PROTECTIVE ORDER
## AND
## PROCEDURES FOR COUNSEL ACCESS TO DETAINEES AT THE UNITED STATES NAVAL BASE IN GUANTANAMO BAY, CUBA

Upon consideration of the parties' positions espoused at the status conference held on July 8, 2008, the parties' submissions, and the record in these coordinated matters, the Court finds that the above-captioned cases involve national security information or documents, the storage, handling, and control of which require special security precautions and access to which requires a security clearance and a "need to know." These cases might also involve

other protected information or documents, the storage, handling, and control of which might require special precautions in order to protect the security of the United States and other significant interests.  Accordingly, to protect the national security, and for good cause shown, the Court

ORDERS that, in place of the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004), as supplemented by the Order Addressing Designation Procedures for Protected Information, first issued on November 10, 2004, and the Order Supplementing and Amending Filing Procedures Contained in the November 8, 2004, Amended Protective Order, first issued on December 13, 2004, the following Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, apply in these coordinated matters:

## I.    PROTECTIVE ORDER

### A.  Overview and Applicability

1.    This Protective Order establishes procedures that must be followed by petitioners and their respective counsel, all other counsel involved in these matters, interpreters/translators for the parties, personnel or support staff employed or engaged to assist in these matters, and all other individuals who, in connection with these matters, receive access to classified national security information or documents or other protected information, including the privilege team as defined in the Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Procedures for Counsel Access"), *see infra* Section II.B.6.

2.    The procedures set forth in this Protective Order apply to all aspects of these matters and may be modified by further order of the Court upon its own motion or upon application by any party. The Court retains continuing jurisdiction to enforce or modify the terms of this Protective Order.

3.    Nothing in this Protective Order precludes the government's use of classified information as otherwise authorized by law outside of these matters.

4.    As appropriate and needed, petitioners' counsel is responsible for advising their employees, petitioners, and others of this Protective Order's contents.

5.    Petitioners' counsel are bound by the terms and conditions set forth in the Procedures For Counsel Access, *see infra* Section II.  To the extent such terms and conditions place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information, this Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in the Procedures for Counsel Access.  Any violation of those terms and conditions will also be deemed a violation of this Protective Order.

6.    The privilege team shall not disclose to any person any information provided by petitioners' counsel or petitioners, other than information provided in a filing with the Court, unless such information, if it were monitored information, could be disclosed under the Procedures for Counsel Access.  Any such disclosure shall be consistent with the provisions of the Procedures for Counsel Access.

## B.  Definitions

7.    As used in this Protective Order, the words "documents" and "information" include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies, whether different from the original by reason of notation made on such copies or otherwise, and further include, but are not limited to:

a.    papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, facsimiles, invoices, worksheets, and drafts, alterations, modifications, changes, and amendments of any kind to the foregoing;

b.    graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

c.    electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

d.    information acquired orally.

8.    The terms "classified national security information and/or documents," "classified information" and "classified documents" mean:

3

a.  any classified document or information that was classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

b.  any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that was derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

c.  verbal or non-documentary classified information known to petitioners or petitioners' counsel; or

d.  any document and information as to which petitioners or petitioners' counsel were notified orally or in writing that such document or information contains classified information.

9.  All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they were declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, "original classification authority").

10. The terms "protected information and/or documents," "protected information," and "protected documents" mean any document or information the Court deems, either *sua sponte* or upon designation pursuant to paragraph 34 of this Protective Order, not suitable for public filing.

11. As used in this Protective Order, the term "petitioners' counsel" includes attorneys employed or retained by or on behalf of a petitioner for purposes of representing the petitioner in habeas corpus or other litigation in federal court in the United States, as well as co-counsel, interpreters/translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.  Access to classified information by all persons mentioned in the foregoing sentence is governed by Section I.D of this Protective Order, and access to protected information by all persons mentioned in the foregoing sentence is governed by Section I.E of this Protective Order.

4

12.     "Access to classified information" or "access to protected information" means having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or protected information.

13.     "Secure area" means a physical facility accredited or approved for the storage, handling, and control of classified information.

14.     "Unauthorized disclosure of classified information" means any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient.

### C.  Designation of Court Security Officer

15.     The Court designates Christine E. Gunning as Court Security Officer for these cases, and Jennifer H. Campbell, Miguel A. Ferrer, Daniel O. Hartenstine, Erin H. Hogarty, Nathaniel A. Johnson, Joan B. Kennedy, Michael P. Macisso, Maura P. Peterson, and Barbara J. Russell as Alternate Court Security Officers (collectively, "CSO") for the purpose of providing security arrangements necessary to protect against unauthorized disclosure of any classified documents or information to be made available in connection with these cases.  Petitioners' counsel shall seek guidance from the CSO with regard to appropriate storage, handling, transmittal, and use of classified documents or information.

### D.  Access to Classified Information and Documents

16.     Without authorization from the government, no petitioner or petitioner's counsel shall have access to any classified information involved in these cases unless that person has done the following:

   a.      received the necessary security clearance as determined by the Department of Justice Security Officer; and

   b.      signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit A, agreeing to comply with the terms of this Protective Order.

17.     Petitioners' counsel to be provided access to classified information shall execute the MOU appended to this Protective Order, and shall file executed originals of the MOU with the Court and submit copies to the CSO and government counsel.  Such execution, filing, and submission of the MOU is a condition precedent to a petitioner's counsel having access to, or continued access to, classified information for the purposes of these proceedings.

18.     The substitution, departure, or removal of any petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Protective

Order.

19. The government shall arrange for one appropriately approved secure area for petitioners' counsel's use. The secure area shall contain a working area supplied with secure office equipment reasonably necessary for preparing petitioners' cases. The government shall bear expenses for the secure area and its equipment.

20. The CSO shall establish procedures to ensure that the secure area is accessible to petitioners' counsel during normal business hours and at other times on reasonable request as approved by the CSO. The CSO shall establish procedures to ensure the secure area is maintained and operated in the most efficient manner consistent with the protection of classified information. The CSO or CSO designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all petitioners' counsel in these and other proceedings.

21. All classified information the government provides to petitioners' counsel, and all classified information petitioners' counsel otherwise possesses or maintains, shall be stored, maintained, and used only in the secure area.

22. No documents containing classified information may be removed from the secure area unless authorized by the CSO or CSO designee supervising the area.

23. Consistent with other provisions of this Protective Order, petitioners' counsel shall have access to the classified information made available to them in the secure area and shall be allowed to take notes and prepare documents with respect to those materials.

24. Petitioners' counsel shall not copy or reproduce any classified information in any form, except with the CSO's approval or in accordance with the procedures established by the CSO for the operation of the secure area.

25. All documents prepared by petitioners or petitioners' counsel that contain or may contain classified information—including, without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Court—shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons possessing an appropriate approval for access to classified information. Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the CSO. All such documents and any associated materials containing classified information—such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, and exhibits—shall be maintained in the secure area unless and until the CSO advises that those documents or associated materials are unclassified in their entirety. None of these materials shall be disclosed to government counsel unless authorized by

the Court, by petitioners' counsel, or as otherwise provided in this Protective Order.

26.    Petitioners' counsel may discuss classified information within the secure area or another area authorized by the CSO only.  Petitioners' counsel shall not discuss classified information over any standard commercial telephone instrument or office intercommunication system and shall not transmit or discuss classified information in electronic mail communications of any kind.

27.    The CSO or CSO designee shall not reveal to any person the content of any conversations he or she hears by or among petitioners' counsel, nor reveal the nature of documents being reviewed by them or the work generated by them, except as necessary to report violations of this Protective Order to the Court or to carry out their duties pursuant to this Protective Order.  Additionally, the presence of the CSO or CSO designee shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

28.    Petitioners' counsel shall not disclose the contents of any classified documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees in this or other courts, except those persons authorized by this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information. Except as otherwise specifically provided by Judge Colleen Kollar-Kotelly in her well-reasoned opinion addressing counsel access procedures regarding petitioners Mohammed Ahmed al Kandari, Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in *Al Odah v. United States*, 02-cv-0828, docket # 117, counsel for petitioners in these cases are presumed to have a "need to know" information both in their own cases and in related cases pending before this Court.  Therefore, and except as provided with respect to the three petitioners in *Al Odah* mentioned above, counsel for all petitioners in these cases who satisfy all necessary prerequisites and follow all procedures set forth herein may share and discuss among themselves classified information to the extent necessary for the effective representation of their clients. Government counsel may challenge the "need to know" presumption on a case-by-case basis for good cause shown.

29.    Petitioners' counsel shall not disclose to a petitioner-detainee classified information not provided by that petitioner-detainee.  Should a petitioner's counsel desire to disclose classified information not provided by a petitioner-detainee to that petitioner-detainee, that petitioner's counsel will provide in writing to the privilege review team, *see infra* Section II.G, a request for release clearly stating the classified information they seek to release.  The privilege review team will forward a petitioner's counsel's release request to the appropriate government agency authorized to declassify the classified information for a determination.  The privilege review team will inform

petitioner's counsel of the determination once it is made.

30.    Except as otherwise provided herein, no petitioners or petitioners' counsel shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in these cases.

31.    Except as otherwise stated in this paragraph, and to ensure the security of the United States of America, at no time, including any period subsequent to the conclusion of these proceedings, shall petitioners' counsel make any public or private statements disclosing any classified information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are classified. In the event that classified information enters the public domain, however, counsel is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain. Counsel may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or protected status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain. In an abundance of caution and to help ensure clarity on this matter, the Court emphasizes that counsel shall not be the source of any classified or protected information entering the public domain. As stated in more detail in paragraph 51 of this Protective Order, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and criminal liability.

32.    The foregoing does not prohibit a petitioner's counsel from citing or repeating information in the public domain that petitioner's counsel does not know to be classified information or a classified document or derived from classified information or a classified document.

33.    All documents containing classified information prepared, possessed or maintained by, or provided to, petitioners' counsel—except filings submitted to the Court and served on government counsel—shall remain at all times in the CSO's control for the duration of these cases. Upon final resolution of these cases, including all appeals, the CSO shall destroy all such documents.

**E. Designation Procedures for and Access to Protected Information and Documents**

34.    Should government counsel in these consolidated cases wish to have the Court deem any document or information "protected," government counsel shall disclose the information to qualified counsel for petitioners—i.e., counsel who have satisfied the necessary prerequisites of this Protective Order for the viewing of protected information—and attempt to reach an agreement about the designation of the information prior to filing a motion with the Court. Petitioners' counsel shall treat such disclosed information as protected unless

and until the Court rules that the information should not be designated as protected.

35. Without authorization from the government or the Court, protected information shall not be disclosed or distributed to any person or entity other than the following:

    a. petitioners' counsel, provided such individuals signed the Acknowledgment, attached hereto as Exhibit B, attesting to the fact that they read this Protective Order and agree to be bound by its terms; and

    b. the Court and its support personnel.

36. The execution of the Acknowledgment is a condition precedent to a petitioner's counsel having access to, or continued access to, protected information for the purposes of these proceedings. A copy of each executed Acknowledgment shall be kept by counsel making the disclosure until thirty days after the termination of this action, including appeals.

37. The substitution, departure, or removal of petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the Acknowledgment executed in connection with this Protective Order.

38. Petitioners' counsel shall not disclose the contents of any protected documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees in this or other courts, except as authorized by this Protective Order, the Court, or government counsel. Except as otherwise specifically provided by Judge Colleen Kollar-Kotelly with respect to counsel for petitioners Mohammed Ahmed al Kandari, Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in *Al Odah v. United States*, 02-cv-0828, petitioners' counsel in these coordinated cases may share protected information with each other but only to the extent that counsel have appropriate security clearances and comply with all other procedures set forth in this Protective Order. Petitioners' counsel shall maintain all protected information and documents received through this proceeding in a confidential manner.

39. Petitioners' counsel shall not disclose protected information not provided by a petitioner-detainee to that petitioner-detainee without prior concurrence of government counsel or express permission of the Court.

40. Except as otherwise provided herein, no petitioner or petitioner's counsel shall disclose or cause to be disclosed any information known or believed to be protected in connection with any hearing or proceeding in these cases.

41. At no time, including any period subsequent to the conclusion of these

proceedings, will petitioners' counsel make any public or private statements disclosing any protected information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are protected.

42.    Protected information shall be used only for purposes directly related to these cases and not for any other litigation or proceeding, except by leave of the Court. Photocopies of documents containing such information shall be made only to the extent necessary to facilitate the permitted use hereunder.

43.    Nothing in this Protective Order shall prevent the government from using for any purpose protected information it provides a party. Nothing in this Protective Order shall entitle another party to protected information.

44.    Supplying protected information to another party does not waive privilege with respect to any person or use outside that permitted by this Protective Order.

45.    Within sixty days of the resolution of these actions, and the termination of any appeals therefrom, all protected documents or information, and any copies thereof, shall be promptly destroyed, provided that the party to whom protected information is disclosed certifies in writing that all designated documents and materials have been destroyed, and further provided that government counsel may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Protected Information Subject to Protective Order." In any subsequent or collateral proceeding, a party may seek discovery of such materials from the government, without prejudice to the government's right to oppose such discovery or its ability to dispose of the materials pursuant to its general document retention policies.

### F.  Procedures for Filing Documents

46.    <u>Unclassified Filing by Petitioners</u>. Pending further order of the Court, any pleading or other document filed by petitioners that petitioners' counsel does not believe contains classified information and has no reason to believe contains classified information is authorized for direct filing in the CM/ECF system consistent with the regular electronic filing practices of this Court. *See* LCvR 5.4. Presumptively classified information that petitioners' counsel learned from a petitioner, *see infra* Section II.D.12.f and Section II.I.29, but has not been determined to be unclassified, shall not be filed in the CM/ECF system. Presumptively classified information shall be filed pursuant to the procedures specified in paragraph 47 of this Protective Order.

47.    <u>Classified Filings by Petitioners</u>. Any pleading or other document filed by petitioners that petitioners' counsel know, have reason to believe, or are uncertain whether it contains classified information, shall be filed, along with

three copies, under seal with the CSO by 4:00 p.m.  Such document must be marked with the appropriate classification marking (e.g., "SECRET").  The time of physical submission to the CSO shall be considered the date and time of filing.  At the time of making a submission to the CSO, petitioners' counsel shall file on the public record in the CM/ECF system a "Notice of Filing," notifying the Court that the submission was made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information.

    a.    Upon receipt, the CSO will deliver to the Court and government counsel any pleading or other document petitioners filed that may contain classified information.  The CSO will forward the document to the appropriate government agencies and departments for their determination as to whether the pleading or other document contains classified information.  To facilitate this review, petitioners' counsel shall identify each paragraph of a document that counsel believe may contain classified information by marking each paragraph with an appropriate classification marking or otherwise specifically identifying such paragraphs.  If, following review by the appropriate government agencies and departments, it is determined that the pleading or other document contains classified information, the CSO must ensure that the document is marked with the appropriate classification marking and that the document remains under seal.  The CSO will work with the appropriate government agencies or departments to prepare a redacted version of the pleading or other document appropriate for filing on the public record.  Counsel shall then file the redacted version of the document in the CM/ECF system with a notation in the upper right hand corner of the first page stating "REDACTED VERSION FOR PUBLIC FILING CLEARED BY CSO."  The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document was submitted to the CSO for review.

    b.    In the event an entire document is deemed classified, petitioners' counsel shall file notice in the CM/ECF system listing the caption of the case, a version of the title of the document that does not disclose classified or protected information, and a brief statement that the CSO informed counsel that the entire document is classified.  The docket entry description in the CM/ECF system for the document suitable for public viewing shall make specific reference to the earlier docket entry notifying the Court that the document was submitted to the CSO for review.

    c.    If it is determined that the pleading or other document does not contain classified information, counsel shall file the full submission in the CM/ECF system and make specific reference to the earlier docket entry

11

notifying the Court that the document was submitted to the CSO for review. The docket entry description shall also state that the CSO approved public filing of the document. The underlying document filed in the CM/ECF system shall contain a notation in the upper right hand corner of the first page stating "PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING."

48. <u>Classified Filings by Respondents</u>.

    a.    Any pleading or other document filed by respondents' counsel containing classified information shall be filed, along with three copies, under seal with the Court through the CSO by 4:00 p.m. The time of physical submission to the CSO shall be considered the date and time of filing. The CSO shall serve a copy of any classified pleading or document on petitioners' counsel at the secure facility. At the time of making a submission to the CSO, respondents shall file on the public record in the CM/ECF system a "Notice of Filing," notifying the Court that a submission was made to the CSO and specifying in general terms the nature of the filing without disclosing any potentially classified information. As soon as practicable following the original filing date, respondents' counsel shall file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record, consistent with the procedures outlined in paragraphs 47.a-c of this Protective Order.

    b.    Nothing herein requires the government to disclose classified information. Additionally, nothing herein prohibits the government from submitting classified information to the Court *in camera* or *ex parte* in these proceedings or entitles petitioners or petitioners' counsel access to such submissions or information. Except for good cause shown in the filing, the government shall provide petitioners' counsel or petitioners with notice served on petitioners' counsel on the date of the filing.

49. <u>Protected Information Filing by Petitioners and Respondents</u>.

    a.    The presence, or potential presence, of protected information in any pleading or document that is governed by paragraph 47 or paragraph 48 of this Protective Order shall not affect the method of filing such pleading or document; it shall be governed by paragraph 47 or 48, as applicable. Any pleading or other document that does not contain classified information but that petitioners' counsel or respondents have reason to believe contains or petitioners' counsel is uncertain whether it contains protected information shall be filed under seal pursuant to Local Civil Rule 5.1(j). At the time of the submission of a filing containing protected but not classified information, the party shall file on the public

record in the CM/ECF system a "Notice of Filing," notifying the Court that a protected information submission was made and specifying in general terms the nature of the filing without disclosing any potentially protected information.  As soon as practicable following the original filing date, counsel for the party submitting the protected information shall file in the CM/ECF system a version of the pleading or document appropriate for filing on the public record, consistent with the procedures outlined in paragraphs 47.a-c of this Protective Order.

b.  This Protective Order shall constitute authorization for petitioners and respondents to file protected information under seal.  That is, no motion to seal is required at the time of submission of the pleading or document to the Clerk's Office.  Procedures for designation of protected information shall be governed by paragraph 34 of this Protective Order.

c.  Nothing herein requires the government to disclose protected information.  Additionally, nothing herein prohibits the government from submitting protected information to the Court *in camera* or *ex parte* in these proceedings or entitles petitioners or petitioners' counsel access to such submissions or information.  Except for good cause shown in the filing, the government shall provide counsel for the petitioner or petitioners with notice served on counsel on the date of the filing.

50.  <u>Disclosure of Protected or Classified Information on the Public Record</u>.  In the event respondents believe that a party has disclosed classified or protected information on the public docket, respondents shall notify the CSO, who shall work with the Clerk's Office to remove the filing from the public docket.  A copy of the filing shall then be lodged with the CSO and treated according to paragraphs 47.b or 47.c of this Protective Order.  Nothing herein limits the government's authority to take necessary remedial action to ensure the protection of the classified or protected information.

### G.  Penalties for Unauthorized Disclosure

51.  Any unauthorized disclosure of classified information may constitute violations of United States criminal laws.  Additionally, any violation of the terms of this Protective Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution.  *See, e.g.*, Executive Order 12958, as amended.  Any breach of this Protective Order may also result in the termination of access to classified information and protected information.  Persons subject to this Protective Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United States or may be used to the advantage of an adversary of the United States or against the interests of the United States.

13

Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could risk the security of United States government personnel and facilities and other significant government interests. This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it without prior written authorization from the original classification authority and in conformity with this Protective Order.

52.   The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.

**II. PROCEDURES FOR COUNSEL ACCESS TO DETAINEES AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA**

### A. Applicability

1.      Except as otherwise stated in these Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba ("Procedures"), or by other Order issued in the United States District Court for the District of Columbia, the following procedures shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO"), for purposes of litigating these cases.

2.      These Procedures do not apply to counsel who are retained solely to assist in a detainee's defense in a trial by military commission. Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

### B. Definitions

3.      "Communications" means all forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

4.      As used in these Procedures, "counsel" means attorneys employed or retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia and admitted, either generally or pro hac vice, in this Court. Unless otherwise stated, "counsel" also includes co-counsel, interpreters/translators, paralegals, investigators, and all other personnel or support staff employed or engaged to assist in the litigation.

5.      "Detainee" means an individual detained by DoD as an alleged enemy combatant at GTMO.

6.      "Privilege team" means a team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission, or combatant status tribunal proceedings involving the detainee. If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

7.      "Legal mail" means letters written between a detainee's counsel and the detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly filed legal documents relating to that representation. The Court is the final arbiter of whether documents fall within the definition of legal mail.

### C.  Requirements for Access to and Communications with Detainees

8.    Security Clearance.

   a.    Counsel must hold a valid, current United States security clearance at the Secret level or higher or its equivalent, as determined by appropriate DoD intelligence personnel.

   b.    Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency that granted the clearance.  Access will be granted only after DoD verification of the security clearance.

   c.    Counsel who do not currently possess a Secret clearance are required to submit an application for clearance to the Department of Justice, Litigation Security Division.

9.    Acknowledgment of and Compliance with Access Procedures.

   a.    Before being granted access to a detainee, counsel will receive a copy of these Procedures.  To have access to a detainee, counsel must agree to comply fully with these Procedures and must sign an affirmation acknowledging an agreement to comply with them.

   b.    This affirmation will not be considered an acknowledgment by counsel that these Procedures are legally permissible.  Even if counsel elect to challenge these Procedures, counsel may not knowingly disobey an obligation imposed by these Procedures.

   c.    DoD expects that counsel, counsel's staffs, and anyone acting on counsel's behalf will fully abide by the requirements of these Procedures.  Counsel are required to provide DoD with signed affirmations from interpreters/translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these Procedures.

   d.    Should counsel fail to comply with these Procedures, access to or communication with detainees will not be permitted.

10.    Verification of Representation.

   a.    Prior to being permitted access to a detainee, counsel must provide DoD with a Notification of Representation.  This Notification must include counsel's licensing information, business and email addresses, and phone

number, as well as the name of the detainee counsel represents. Additionally, counsel shall provide evidence of their authority to represent the detainee.

b.    Counsel shall provide evidence of their authority to represent the detainee as soon as practicable and, in any event, not later than ten days after the conclusion of a second visit with a detainee. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should a detainee's counsel believe the government is unreasonably limiting the number of visits with the detainee, counsel may petition the Court at the appropriate time for relief.

c.    If counsel withdraw from representation of a detainee, or if the representation is otherwise terminated, counsel shall inform DoD immediately of that change in circumstances.

d.    Counsel must provide DoD with a signed representation stating (a) that, to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

11.    <u>Logistics of Counsel Visits</u>.

a.    Counsel shall submit to the Department of Justice ("DoJ") any request to meet with a detainee. Requests shall specify dates of availability for a meeting, the desired duration of the meeting, and the language that will be utilized during the meeting with the detainee. Reasonable efforts will be made to accommodate counsel's requests regarding the scheduling of a meeting. Once a request is approved, DoJ will contact counsel with the date and duration of the meeting.

b.    Legal visits shall take place in a room designated by JTF-Guantanamo. No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo. Such approval shall not be unreasonably withheld.

c.    Due to the mission and location of GTMO, certain logistical details,

including arrangements for travel and lodging, will need to be coordinated by counsel prior to arrival. DoJ will provide specific information regarding these issues.

d.      In order to travel to GTMO, counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid, current United States security clearance at the Secret level or higher or its equivalent, as determined by appropriate DoD intelligence personnel. Country and theater clearances require twenty days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

## D.  Procedures for Correspondence Between Counsel and Detainees

12.     <u>Mail Sent by Counsel to Detainees ("Incoming Mail")</u>.

a.      Counsel shall send incoming legal mail for detainees to the privilege team at the appropriate address provided by government counsel. Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Detainee."

b.      Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

c.      Upon receiving legal mail from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband. Within two business days of receipt of legal mail, and assuming no physical contraband is present, the privilege team shall forward the mail to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved by Privilege Team" and clearly indicating the identity of the detainee to whom the legal mail is to be delivered. The privilege team shall return to the sender any incoming mail that does not comply with the terms of paragraphs 12.a and 12.b of these Procedures.

d.      Within two business days of receipt of legal mail from the privilege team, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved by the Privilege Team" to the detainee without opening the envelope or mailer. If counsel desire

confirmation that documents were delivered to the detainee, counsel shall provide a stamped, self-addressed envelope for that purpose. The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.

e.   Written correspondence to detainees not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel. Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee. These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee nonlegal mail.

f.   Counsel shall treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and the privilege team, this Court, or another court determines it to be otherwise. Accordingly, if counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

g.   Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO, including names of U.S. Government personnel and the layout of camp facilities, or the status of other detainees, not directly related to counsel's representation.

13.   Mail Sent by Detainees to Counsel ("Outgoing Mail").

a.   Detainees will be provided with paper to prepare communications to counsel. In the presence of military personnel, the detainee will seal the written communication in an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the detainee's and counsel's names. Envelopes annotated with the names of persons other the detainee's counsel, including family, friends, or other attorneys, shall be processed

19

according to the standard operating procedures for detainee non-legal mail.

b.      Military personnel will collect the outgoing legal mail within one business day of being notified by a detainee that the communication is prepared for sealing and mailing.

c.      After outgoing legal mail is collected from a detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo. The larger envelope will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will be annotated with the detainee's and counsel's names. The envelope will be sealed and mailed in the manner required for classified materials. Within two business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel.

d.      Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

e.      In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel, including family, friends, or other attorneys, are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

**E.  Materials Brought into Meetings with Detainees and Counsel**

14.     Counsel shall bring only legal mail, writing utensils and paper into any meeting with a detainee, unless counsel receives prior approval from the Commander, JTF-Guantanamo. The Commander shall not unreasonably withhold approval for counsel to bring into a meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the government has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States.

15.     Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO, including names of U.S. Government personnel and the layout of camp

facilities, or the status of other detainees, not directly related to counsel's representation.

### F.  Materials Brought out of Meetings with Detainees and Counsel

16.   Upon completion of each meeting with a detainee or during any break in a meeting session, counsel will give the notes or documents used or produced during the meeting to a designated individual at Guantanamo.  These materials shall be sealed in counsel's presence and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

17.   Upon completion of counsel's visit to Guantanamo, the notes or documents used or produced during the visits shall be sealed in counsel's presence and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel."  The envelope shall be sealed into a larger envelope by military personnel at Guantanamo.  The larger envelope shall be marked as "Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and annotated with the detainee's and counsel's names.  The envelope shall be sealed and mailed in the manner required for classified materials.  Within two business days following completion of counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

18.   Correspondence or messages from a detainee to individuals other than his counsel, including family, friends, or other attorneys, will not be handled through this process.  If a detainee provides these communications to counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

### G.  Classification Determination of Detainee Communications

19.   Counsel may submit information learned from a detainee to the privilege team for a determination of its appropriate security classification.  Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination.  All documents submitted for classification review shall be prepared, handled, and treated in the manner required for classified materials as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.  No information derived from these submissions shall be disclosed outside the privilege team pursuant to these Procedures until after the privilege team has reviewed it for security and intelligence purposes.  Absent express consent of the Court, or except as otherwise provided in these Procedures, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those

communications, nor shall the submissions be disclosed to any government personnel involved in any domestic or foreign court, military commission, or combatant status tribunal proceedings involving the detainee.

20. Counsel shall send all materials submitted for classification review to the appropriate address as provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the detainee's and counsel's names. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer shall be sealed and mailed in the manner required for classified materials.

21. As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

    a.    seven business days for information written in English;

    b.    fourteen business days for any information that includes writing in any language other than English, to allow for translations by the privilege team; and

    c.    twenty business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

22. While conducting classification review, the privilege team shall promptly report to the Commander, JTF-Guantanamo any information that reasonably could be expected to result in immediate and substantial harm to the national security. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military, and intelligence officials, as appropriate.

23. If, at any time, the privilege team determines that information in the documents submitted for classification review relates to imminent acts of violence, the privilege team shall report the contents of those documents to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military, and intelligence officials, as appropriate.

24. The privilege team shall not disclose outside the privilege team any information counsel submit for classification review, except as provided by these Procedures or as permitted by counsel submitting the information.

22

### H.  Telephonic Access to Detainees

25.    Requests for telephonic access to a detainee by counsel or other persons will not
normally be approved.  Such requests may be considered on a case-by-case
basis due to special circumstances and must be submitted to Commander, JTF-
Guantanamo.

26.    Any telephonic access by counsel is subject to appropriate security procedures.
Such procedures shall not include contemporaneous monitoring or recording.

27.    Any telephonic access by persons other than counsel is subject to appropriate
security procedures, including contemporaneous monitoring and recording.

### I.  Counsel's Handling and Dissemination of Information from Detainees

28.    Subject to the terms of the Protective Order, *see supra* Section I, and any other
applicable protective order, counsel may disseminate the unclassified contents of
a detainee's communications for purposes reasonably related to their
representation of that detainee.

29.    Counsel shall treat all information learned from a detainee, including any oral
and written communications with a detainee, as classified information, unless
and until the information is submitted to the privilege team and determined to be
otherwise.  All classified material must be handled, transported and stored in a
secure manner, as provided by Executive Order 12958, DOD Regulation
5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation
5200.1R.

30.    Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information
learned from a detainee involving future events that threaten national security or
involve imminent violence.

31.    Counsel may not divulge classified information not learned from the detainee to
the detainee.  Counsel may not otherwise divulge classified information related
to a detainee's case to anyone except those with the requisite security clearance
and need to know using a secure means of communication.  Counsel for
detainees in these coordinated cases are presumed to have a "need to know"
information in related cases pending before this Court.  Counsel for respondents
in these cases may challenge this presumption on a case-by-case basis for good
cause shown.

### J.  JTF-Guantanamo Security Procedures

32.    Counsel shall comply with the following security procedures and force
protection safeguards applicable to the U.S. Naval Base in Guantanamo Bay,
Cuba, JTF-Guantanamo and the personnel assigned to or visiting these

locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

33.  Contraband is not permitted in JTF-Guantanamo, and all visitors are subject to search upon arrival and departure.  Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt.  Contraband also includes, but is not limited to, money, stamps, cigarettes, and writing instruments.  No items of any kind may be provided to a detainee without the advance approval of the Commander, JTF-Guantanamo.

34.  Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo.  No electronic communication devices are permitted.  All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo.  Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

35.  Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel using metal detectors, as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of counsel's persons.

36.  Counsel shall not interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, JTF-Guantanamo.  Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

37.  Counsel will meet with detainees in conference facilities provided by GTMO.  These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons.  The only other method of visual observation available is for the door to remain open with military police sitting outside the door.  No oral communications between counsel and the detainees will be heard.

38.  At the conclusion of meetings with detainees, counsel will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

**SO ORDERED**.


September 11, 2008                                      /s/
                                          _____
                                               Thomas F. Hogan
                                          United States District Judge


24

Exhibit A

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE:** | **Misc. No. 08-0442 (TFH)** |
| **GUANTANAMO BAY DETAINEE LITIGATION** | **Civil Action No.** |

### MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO CLASSIFIED NATIONAL SECURITY INFORMATION

Having familiarized myself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 12958; I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government. In consideration for the disclosure of classified information and documents:

(1)    I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order entered in the United States District Court for the District of Columbia in the above-captioned cases.

(2)    I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.

(3)    I have received, read, and understand the Protective Order entered by the United States District Court for the District of Columbia in the above-captioned cases, and I agree to comply with the provisions thereof.

Dated: _____        _____

Exhibit B

**EXHIBIT B**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that he/she has read the Protective Order first entered on September 11, 2008, in the United States District Court for the District of Columbia in the consolidated cases captioned In re Guantanamo Bay Detainee Litigation, No. 08-mc-0442, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any protected information or documents made available to him/her other than as provided by the Protective Order. The undersigned acknowledges that his/her duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of sanctions by the Court.


DATED: _____     BY: _____
                                        (type or print name)



                                 SIGNED: _____