UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY DETAINEE LITIGATION** | Misc. No. 08-0442 (TFH)<br><br>Civil Action Nos.<br><br>02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2035, 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0998, 05-cv-0999, 05-cv-1048, 05-cv-1189, 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457, 05-cv-1458, 05-cv-1487, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1505, 05-cv-1506, 05-cv-1509, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1602, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1639, 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1704, 05-cv-1971, 05-cv-1983, 05-cv-2010, 05-cv-2088, 05-cv-2104, 05-cv-2185, 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, 05-cv-2370, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2381, 05-cv-2384, 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2398, 05-cv-2444, 05-cv-2479, 06-cv-0618, 06-cv-1668, 06-cv-1684, 06-cv-1690, 06-cv-1758, 06-cv-1759, 06-cv-1761, 06-cv-1765, 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, 08-cv-1085, 08-cv-1101, 08-cv-1104, 08-cv-0987, 08-cv-1101, 08-cv-1104, 08-cv-1153, 08-cv-1185, 08-cv-1207, 08-cv-1221, 08-cv-1223, 08-cv-1224, 08-cv-1227, 08-cv-1228, 08-cv-1229, 08-cv-1230, 08-cv-1231, 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, 08-cv-1310, 08-cv-1360, 08-cv-1440 |

## **MEMORANDUM OPINION**

Pending before the Court is the government's Motion For Partial And Temporary Relief From The Court's July 11, 2008 Scheduling Order. For the reasons that follow, the Court will grant the motion.

A little over three months ago, the Supreme Court held that foreign nationals detained at the United States Naval Base at Guantanamo Bay, Cuba, "are entitled to the privilege of habeas corpus to challenge the legality of their detention." *Boumediene v. Bush*, ___ U.S.

___, 128 S. Ct. 2229, 2262 (2008).  In its decision, the Court directed that, "[w]hile some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody." *Id*. at 2275.  In sum, the Supreme Court held, "[t]he detainees in these cases are entitled to a prompt habeas corpus hearing." *Id*.

Following the Supreme Court's decision in *Boumediene*, this Court convened two meetings with government counsel and representative counsel for petitioners—the first on June 18, 2008, and the second on June 25, 2008—during which the Court and counsel discussed management of these habeas cases.  On July 1, 2008, the Judges of this Court resolved by Executive Session to designate the undersigned to coordinate and manage proceedings in all cases involving petitioners presently detained at Guantanamo Bay, Cuba,[1] so that these cases would be addressed as expeditiously as possible per the Supreme Court's directive in *Boumediene*.  One week later, this Court held a status conference to discuss the procedures for handling these cases, including the schedule by which the government was to process factual returns.  On July 11, 2008, the Court entered a scheduling order in which, relying in part on the government's assurances that it could meet such a schedule, the Court ordered the government to file factual returns at a rate of fifty per month, with the first fifty due by August 29, 2008.

Just before midnight on August 29, 2008, and after filing only ten factual returns in these consolidated cases,[2] the government filed the instant motion.  In its motion, the government explains that it "simply did not appreciate the full extent of the challenges posed

---

[1] Judges Richard J. Leon and Emmet G. Sullivan opted to retain for all purposes the Guantanamo Bay cases assigned to them.

[2] The government had filed an additional twelve returns in cases before Judges Leon and Sullivan.

2

by the extensive need for classified information in these cases when [it] proposed to complete the first set of factual returns by the end of August" and, therefore, requests that this Court grant it "partial and temporary" relief from the July 11, 2008, scheduling order. Respondents' Motion For Partial And Temporary Relief From The Court's July 11, 2008 Scheduling Order ("Gov't Mot.") 1, 3. Specifically, the government asks this Court to extend by thirty days the date by which it is to file the first fifty factual returns.[3] In support of its motion, the government attached public declarations from high-level government officials—the Acting General Counsel for the Department of Defense, the Assistant Attorney General for the Civil Division of the Department of Justice, and the Director of the Central Intelligence Agency—as well as an *ex parte* declaration from the Director of the Central Intelligence Agency, explaining the substantial resources and efforts the government has devoted to preparing factual returns and the risk of harm to the national security involved in releasing classified information to persons outside the Executive Branch.[4]

Nearly all of the petitioners in these consolidated cases object to the government's request for an extension of time and filed or joined oppositions stating their respective positions for doing so. *See, e.g.*, 08-mc-442, Docket Nos. 327, 330, 334, 341, 342, 346, 348, 350, 351, 353, 354, 355, 356, 392, 400 (joined by petitioners in 64 cases), and 406. For the most part, petitioners contend that granting the motion would prejudice them by further

---

[3] Consequently, the relief the government seeks is actually neither "partial" nor "temporary." Rather, the government seeks to, at a minimum, push back each monthly filing deadline by 30 days. *See* Gov't Mot. 4 ("We expect to finish production of the first 50 factual returns on a rolling basis throughout September, and hope to achieve production of returns at that rate each month thereafter.").

[4] Since filing the instant motion, the government has submitted an additional thirteen factual returns.

delaying habeas hearings, contrary to the Supreme Court's admonition in *Boumediene* that petitioners are entitled to "prompt habeas corpus hearing[s]," 128 S. Ct. at 2275. And they assert that government's reasons for requesting an extension are unpersuasive. To penalize the government for failing to meet the Court's deadline and to deter future violations of the scheduling order, petitioners propose various sanctions, including denial of motions to amend factual returns, default, and evidentiary and monetary sanctions.

Cognizant of the Supreme Court's directive that this Court address petitioners' cases expeditiously, *see Boumediene*, 128 S. Ct. at 2275, while, at the same time, "us[ing] its discretion" to accommodate the government's "legitimate interest in protecting sources and methods of intelligence gathering . . . to the greatest extent possible," *id*. at 2276, the Court will grant the government's motion. Upon review of the public and *ex parte* declarations, the Court is satisfied that the government is not dragging its feet in an attempt to delay these matters beyond what is necessary to protect the national security concerns associated with releasing classified information. These cases are not run of the mine; they involve significant amounts of sensitive, classified information concerning individuals whom the government alleges were part of or supporting the Taliban or al Qaida or other organizations against which the United States is engaged in armed conflict. The Court, therefore, must proceed with "caution . . . [and] pay proper heed both to the matters of national security that might arise in an individual case and to the constitutional limitations safeguarding essential liberties that remain vibrant even in times of security concerns." *Hamdi v. Rumsfeld*, 542 U.S. 507, 538-39 (2004) (plurality). As described in the Director of the Central Intelligence Agency's *ex parte* declaration, the dangers and risks to the national security that could follow from inadequate intelligence agency review of factual returns lead this Court to find that the

4

government's requested extension of thirty days strikes, in this context, the proper balance between protecting the national security and providing petitioners the prompt habeas corpus hearings to which they are entitled.

As it is disappointed in the government's failure to meet the schedule the Court adopted based in part on the government's assurances, the Court grants the government's motion reluctantly. At this juncture, however, the Court is not convinced that the scope and nature of the sanctions petitioners propose are warranted to ensure that the government will meet its future obligations under the Court's scheduling order. But the Court admonishes the government that, in allowing it an additional thirty days to file each set of factual returns in these cases, the Court is not merely setting a "goal" for which the government is to "strive," Gov't Mot. 10-11 (contending that the government has diligently proceeded to "attempt to meet its goal"); *id*. at 12 ("The government will continue to strive to meet the 50-per-month requirement."). Rather, the Court is ordering the government to produce at least fifty factual returns by month's end, followed by at least fifty more each month thereafter until production is complete. Nor is the government's "doubt that Petitioners' counsel can respond, and the Court can adjudicate, cases at that pace," Gov't Reply 4, a basis on which the government can rely to disobey an order of this Court.

While the Court is not unsympathetic to the government's current workload and that, since *Boumediene* was decided a little over three months ago, government "[a]ttorneys and others from multiple agencies have worked long and hard, nights and weekends," *see* Gov't Mot. 10-11, 10 n.3, the government has detained many of these petitioners for more than six years, and the time has come to provide them with the opportunity to fully test the legality of such detention in a prompt, meaningful manner. And although the Court cannot fault the

5

government for failing to "engage[] in resource ramp-up," Gov't Mot. 11 n.3, prior to the Supreme Court's decision in *Boumediene*, it was "no bolt out of the blue" that detainees at Guantanamo would be able to fully test the legality of their detention through habeas corpus challenges. 128 S. Ct. at 2278 (Souter, J., joined by Ginsburg & Breyer, JJ., concurring). Indeed, the Supreme Court held as much over four years ago. *See Rasul v. Bush*, 542 U.S. 466, 481-82 (2004) ("We therefore hold that [28 U.S.C.] § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base.").

Review of the public and *ex parte* declarations assures the Court that the government is now on notice of the time needed "to accomplish the development and finalization of amended and original factual returns in the pending habeas cases," Gov't Reply 2. Going forward under the revised schedule resulting from the Court's granting of its motion, consequently, the government cannot claim as a basis for failing to meet deadlines imposed by this Court that it "simply did not appreciate the full extent of the challenges posed," Gov't Mot. 3. Except for good cause shown, therefore, the Court will not tolerate any further delay. *Boumediene*, 128 S. Ct. at 2275 ("While some delay in fashioning new procedures is unavoidable, the costs of delay can no longer be borne by those who are held in custody.").

September 19, 2008                                /s/
                                          Thomas F. Hogan
                                          United States District Judge

6